UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:17-cv-00302-FDW

| | |
|---|---|
| BROOKE D. STEWART GARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Brooke Delee Stewart Garrison's Motion for Summary Judgment (Doc. No. 11) filed April 11, 2018, Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 13) filed on June 8, 2018, and Plaintiff's Motion to Remand (Doc. No. 18) filed on July 19, 2018. Plaintiff, through counsel, seeks remand of her case for a new hearing pursuant to Rule 7(b). In the alternative, Plaintiff seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the COURT DENIES Plaintiff's Motion to Remand, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Motion for Summary Judgment.

I. BACKGROUND

Plaintiff filed an application for disability benefits under Title II on November 8, 2013, alleging disability beginning Match 11, 2010. (Tr. 14). After her application was denied initially and upon reconsideration (Tr. 112, 130, 134), Plaintiff requested a hearing (Tr. 139). A hearing

1

was held on October 12, 2016. (Tr. 14, 33, 222). On November 15, 2016, the ALJ issued an unfavorable decision. (Tr. 11). Plaintiff's request for review by the Appeals Council was denied on September 15, 2017. (Tr. 1).

The ALJ determined Plaintiff was not disabled since the date the application was filed. (Tr. 14). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 8, 2013. (Tr. 16). Then, the ALJ found Plaintiff had the severe impairments of status-post left shoulder surgery with mild osteoarthritis, degenerative disc disease lumbar spine, torticollis, migraines, status-post left knee arthroscopy, seizures, unspecified depressive and anxiety disorders, posttraumatic stress disorder, personality disorder, and post-concussive syndrome. (Tr. 16). The ALJ determined that none of these impairments nor any combination of the impairments met or medically equaled a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes, or scaffolds, and she cannot perform overhead work with the left upper extremity. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, she can occasionally use the left upper extremity for pushing, pulling, handling, and fingering, and she should avoid concentrated exposure to hazards. The claimant can perform and maintain concentration for simple, routine, repetitive tasks for two-hour segments, and she can tolerate occasional interaction with supervisors, coworkers, and the general public.

(Tr. 18). The vocational expert ("VE") testified that the Plaintiff's past relevant work as a home health aide and telemarketer exceeded Plaintiff's RFC and that Plaintiff was unable to perform the duties of her past relevant work. (Tr. 25). In response to hypotheticals that factored in Plaintiff's age, education, work experience, and RFC, the VE testified that an individual with these limitations could perform jobs in the national economy and listed jobs, which work exists in significant numbers in the national economy. (Tr. 26–27). Thus, the ALJ concluded that Plaintiff

2

was not disabled, as defined in the Social Security Act. (Tr. 27).

## II. MOTION TO REMAND

Plaintiff filed a Motion to Remand under Lucia, seeking a new hearing, before a different ALJ, on the grounds that the ALJ presiding over her claim was not constitutionally appointed. (Doc. No. 18). In Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. However, Lucia made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. Id. (quoting Ryder, 515 U.S. at 182-83). In Lucia, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. Id. To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings. (See AR 8, 32-63; J. Stip. at 4-9, 19-22); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (plaintiff forfeits issues not raised before ALJ or Appeals Council). For these reasons, this Court DENIES Plaintiff's Motion to Remand (Doc. No. 18) and addresses the arguments made on summary judgment.

## III. MOTION FOR SUMMARY JUDGMENT

Plaintiff has exhausted all administrative remedies and now appeals. (Doc. No. 1). In Plaintiff's motion for summary judgment, Plaintiff claims that the ALJ's decision should be reversed because the ALJ committed error to the prejudice of the Plaintiff in his evaluation of the vocational expert's (VE) testimony. (Doc. No. 12 at 13).

A. Standard of Review

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied

correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national

economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

5

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

B. Analysis

Plaintiff asserts one assignment of error, namely that the ALJ "committed error to the prejudice of the Plaintiff in his evaluation of the [VE]'s testimony." (Doc. No. 12 at 13). After asserting this one assignment of error, Plaintiff does not proceed to articulate any analysis or meaningful legal arguments in support thereof. Instead, Plaintiff makes numerous conclusory assertions of error that do not appear to relate directly to the assignment of error identified.

Members of the Social Security bar, including the Plaintiff's counsel, have been warned repeatedly that the Court will consider only those legal arguments properly set forth in a separate assignment of error. See, e.g., Powell v. Berryhill, No. 1:16-CV-00268-MR, 2017 WL 4354738 at *2 (W.D.N.C. Sept. 29, 2017); Sanders v. Berryhill, No. 1:16cv236, 2017 WL 3083730, at *3 (W.D.N.C. June 12, 2017), adopted by, 2017 WL 3083261 (W.D.N.C. July 19, 2017); Mason v. Berryhill, No. 1:16cv148, 2017 WL 2664211, at *4 (W.D.N.C. May 30, 2017), adopted by, 2017 WL 2662987 (W.D.N.C. June 20, 2017); Demag v. Berryhill, No. 1:15-CV-00229-MR, 2017 WL 927258, at *5 n.5 (W.D.N.C. Mar. 8, 2017); Woods v. Colvin, No. 1:16cv58, 2017 WL 1196467, at *4 n.2 (W.D.N.C. Feb. 8, 2017) (collecting cases), adopted by, 2017 WL 1190920 (W.D.N.C.

Mar. 29, 2017); Armstrong v. Colvin, No. 5:15cv110, 2016 WL 7200058, at *3 n.2 (W.D.N.C. Sept. 2, 2016), adopted by, 2016 WL 6652455 (W.D.N.C. Nov. 9, 2016); McClellan v. Astrue, No. 1:12-CV-00255-MR-DLH, 2013 WL 5786839, at *3 n.2 (W.D.N.C. Oct. 28, 2013). Accordingly, to the extent that Plaintiff attempts to weave any other legal arguments or errors into her sole assignment of error, the Court disregards those arguments.[1]

Plaintiff's one assignment of error appears to hinge on her allegation that the ALJ improperly relied on VE testimony because the ALJ failed to ask questions that would have ensured that the VE knew the claimant's abilities and limitations. In particular, Plaintiff alleges that the ALJ should have "identif[ied] with precision the vocational expert both the physical and non-exertional limitations of the Plaintiff...." (Doc. No. 12 at 17). However, this Court disagrees.

---

[1] Even if Plaintiff had properly presented these arguments as separate assignments of error, the Court would still conclude that remand is not warranted.

First, there is substantial evidence in the record to support the ALJ's evaluation of Plaintiff's headaches. (Tr. 23).

Second, there is substantial evidence in the record to support the ALJ's decision to give little weight to Dr. Deborah Barnett's assessments and assign great weight to only certain aspects of Dr. Karen Marcus's assessments. (Tr. 17, 24–25). Plaintiff argues that the ALJ "fail[ed] to mention all the evaluation and findings of clinical psychologist Dr. Deborah Barnett, whose opinions regarding the vocationally significant limitations of functioning of the Plaintiff' agree with the opinions stated by Dr. Marcus." (Doc. No. 12 at 27). The Court disagrees. The ALJ is required to weigh and evaluate all medical opinions received, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Here, the ALJ provided an explanation for his decision to assign little weight to Dr. Barnett's assessments, concluding that they were far removed from the relevant period (Tr. 17). Regarding Dr. Marcus, the ALJ assigned less weight to some aspects of Dr. Marcus's assessment because of inconsistencies between Dr. Marcus's assessment and the medical record as a whole, as well as inconsistences between some of Dr. Marcus's own assessments. (Tr. 24–25). Thus, the ALJ's assessment of the medical opinions at issue is supported by substantial evidence.

Third, the ALJ properly accounted for Plaintiff's concentration, persistence, and pace in his RFC. In Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d 632, 638 (4th Cir. 2015) (citation and internal quotation marks omitted). "An explanation of how long a claimant is able to sustain concentration and attention to perform tasks is a direct accounting of the claimant's ability to stay on task—and difficulties in concentration, persistence and pace." Roope v. Berryhill, No. 5:16-CV-48-GCM, 2017 WL 1364603, at *3 (W.D.N.C. Apr. 12, 2017). In Roope, while the ALJ did not expressly use the term "on task," this Court found that this limitation reflected the plaintiff's ability to stay on task for more than two hours. Id. Consistent with the Fourth Circuit's holding, the RFC in this case accounted for Plaintiff's limitation in concentration, persistence, or pace in the RFC by limiting her to the ability to "maintain concentration for simple, routine, repetitive tasks for two-hour segments" and to occasional interaction with supervisors, coworkers, and the public. (Tr. 18). In so finding, the ALJ sufficiently explained his determination, which is supported by substantial evidence in the record.

In questioning an VE, an ALJ must pose hypothetical questions that are based upon a consideration of all relevant evidence regarding the claimant's impairment. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005); English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the VE great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984).

Here, the ALJ presented the following hypothetical to the VE:

> [A]ssume for the sake of this first hypothetical probably based on the same person, the same age, the same educational level, the same work experience. Let's start off where this person could do light work; occasional posturals; no ropes/ladders/scaffolds; occasional use of a left upper extremity; push/pull for lack of a better way to put it; occasional handling and fingering with the left upper extremity; avoid concentrated exposure to hazards; limited to simple/routine/repetitive work; occasional contact with co-workers, supervisors and public. The individual can perform simple/routine tasks for two-hour blocks at a time with normal rest breaks during an eight-hour workday. Would there be jobs?

(Tr. 47–48). The VE responded in the affirmative, indicating that the following jobs would be available: office helper (1,800 jobs in North Carolina and at least 116,000 jobs in the United States economy); shipping and receiving weigher (1,500 jobs in North Carolina and at least 85,000 jobs in the United States economy); and routing clerk (1,200 jobs in North Carolina and at least 41,600 jobs in the United States economy). (Tr. 48).

The ALJ then posed a second hypothetical with the same physical limitations but asking if the person could do sedentary work. (Tr. 48). The VE responded that an individual with such limitations would be able to perform the jobs of document preparer (1,000 jobs in North Carolina and at least 44,900 jobs in the United States economy); surveillance systems monitor (116 jobs in North Carolina and at least 14,500 jobs in the United States economy); and addresser (162 jobs in North Carolina and at least 17,900 jobs in the United States economy). (Tr. 48–49). The ALJ then

posed a third hypothetical with the same limitations but adding the Claimant's testimony. (Tr. 49). The VE responded that an individual with such limitations would not be able to perform other work. (Tr. 49). Notwithstanding this opinion from the VE, the ALJ found the Plaintiff to be not disabled because he ultimately gave less weight to the Plaintiff's testimony.

Here, the Court finds that the ALJ properly identified Plaintiff's functional limitations or restrictions in his hypothetical to the VE to ensure that the VE knew the claimant's abilities and limitations. (See Tr. 47–48). But see Riley v. Chater, No. 94-1797, 1995 WL 361483, at *3 (4th Cir. June 16, 1995) ("In his hypothetical questions, the ALJ asked the expert to assume that Claimant could do 'light work.' The exact nature of Claimant's limitations that relegated him to "light work" was undisclosed, and thus, we have no way of determining whether the VE recognized all of claimant's disabilities."); Bass v. Colvin, No. 3:14–cv–00075–MOC, 2014 WL 5147562, at *3 (W.D.N.C. Oct. 14, 2014) ("While the transcript reveals that the ALJ prefaced his questions to the VE with an inquiry concerning whether she had been present during the hearing, at no point during the hearing did the ALJ set forth his determination of plaintiff's RFC."). Unlike Riley and Bass, the ALJ in this case incorporated both Plaintiff's exertion work level, as well as any further limitations the ALJ found based upon his consideration of all other evidence in the record. Further, while the ALJ did not explicitly restate Plaintiff's limitations in his second and third hypothetical questions, the ALJ incorporated Plaintiff's limitations by reference in his questions to the VE.

Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the VE great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984). Here, the ALJ adopted the opinion of the VE that is consistent with the limitations that he found. Because Plaintiff's conditions and limitations

outlined in the RFC were accurately portrayed to the VE, the ALJ's reliance on the opinion of the VE that jobs were available to a person with Plaintiff's limitations was proper. Thus, the Court concludes that the ALJ's decision is supported by substantial evidence and was reached through proper application of the correct legal standards.

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 13) is GRANTED and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: October 10, 2018

Frank D. Whitney
Chief United States District Judge